

FILED

**Margaret Botkins
Clerk of Court**

4:27 pm, 8/17/21

J. Douglas McCalla, WSB # 5-1523
j.douglas.mccalla@gmail.com
Robert A. Krause, WSB #5-2824
krause@spencelawyers.com
Elizabeth A. Richards, WSB #6-4249
richards@spencelawyers.com
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
P.O. Box 548
Jackson, Wyoming 83001
307.733.7290

Larissa A. McCalla, WSB # 6-2981
larissa.mccalla@gmail.com
MCCALLA LEGAL GROUP
540 Ulm Road
Wyarno, Wyoming 82845
307.699.0366

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF WYOMING

| | |
|---|---|
| DAIN PARRISH; TESSA PARRISH; and DAIN and TESSA PARRISH as parents of O.R.P., their minor child,<br><br>    Plaintiffs,<br><br>v.<br><br>FCA US, LLC, a Delaware limited liability company,<br><br>    Defendant. | Civil No. 21-CV-156-J<br><br>**COMPLAINT & JURY DEMAND** |

Plaintiffs, by and through their attorneys J. Douglas McCalla, Robert A. Krause,

and Elizabeth A. Richards, of The Spence Law Firm, LLC, and Larissa A. McCalla, of

the McCalla Legal Group, plead and allege their causes of action against Defendant as follows:

## PARTIES

1. Plaintiff Dain Parrish was seriously injured when the 2004 Dodge Caravan (Caravan) in which he was a passenger rolled, and the Caravan's roof collapsed and crushed him.

2. Dain is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

3. Plaintiff Tessa Parrish is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity. Tessa Parrish is, and has been at all times relevant to the facts alleged in this Complaint, married to Dain.

4. Plaintiff O.R.P. is the minor child of Dain and Tessa. O.R.P. is, and has been at all times relevant to the facts alleged in this Complaint, a resident of Wyoming who is a citizen of Wyoming for the purpose of determining diversity.

5. The Chrysler Corporation was founded in 1925.

6. In 1998, the company merged with German automaker Daimler-Benz AG to form the DaimlerChrysler Corporation.

7. In 2007, the company converted to a limited liability company, DaimlerChrysler Company, LLC, and then became Chrysler, LLC (Chrysler).

8. On April 30, 2009, Chrysler and certain of its affiliates filed a pre-packaged bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York.

9. Chrysler became known as Old Carco, LLC (Old Carco).

10. On or about April 28, 2009, a new acquisition company, New CarCo Acquisition, LLC (New CarCo), was formed.

11. On April 30, 2009, New CarCo entered into a Master Transaction Agreement (MTA) under which it agreed to purchase substantially all of the assets of Chrysler/Old Carco and its affiliated debtors, and to assume certain liabilities.

12. The sale closed on June 10, 2009 (the Closing).

13. On or about June 10, 2009, New CarCo changed its name to Chrysler Group, LLC (Chrysler Group).

14. Pursuant to Amendment No. 4 of the MTA, Chrysler Group assumed liability for claims arising out of motor vehicle accidents occurring after the Closing, and involving a Dodge brand vehicle manufactured and sold prior to the Closing.

15. In December 2014, Chrysler Group became defendant FCA US, LLC (FCA).

16. As set forth above, FCA assumed liability for the claims and damages alleged in this Complaint.

17. One or more of the pre-bankruptcy entities (Old Carco LLC, Chrysler LLC, DaimlerChrysler Company LLC, DaimlerChrysler Corporation, and/or Chrysler Corporation (hereafter and collectively "Old Chrysler") designed, tested, manufactured, labeled, inspected, assembled, distributed, monitored, promoted,

       marketed and/or sold the Dodge Caravan model, including the Caravan involved in this case.

18. On information and belief, DaimlerChrysler Corporation manufactured the Caravan involved in this case (Vehicle Identification Number 1D4GP24R34B519636).

19. FCA assumed liability for the acts and omissions of Old Chrysler related to the Dodge Caravan model, including the Caravan involved in this case.

20. FCA is a Delaware limited liability company whose sole member is FCA North America Holdings, LLC. FCA North America Holdings, LLC, is a Delaware limited liability company whose sole member is FCA Holdco B.V., a company organized under the laws of the Netherlands. FCA Holdco B.V. is wholly owned by Stellantis N.V. (f/k/a Fiat Chrysler Automobiles, N.V.). Stellantis N.V is a publicly traded company incorporated under the laws of the Netherlands, with its principal place of business in Lijnden, Netherlands.

21. For purposes of determining diversity, FCA is a citizen of a foreign state. FCA is a citizen of the state in which its sole member, FCA North America Holdings, LLC, is a citizen. FCA North America Holdings, LLC, is a citizen of the state in which its sole member, FCA Holdco B.V., is a citizen. Based on the above and 28 U.S.C. § 1332(c)(1), the citizenship of FCA Holdco B.V. (and therefore the citizenship of FCA North America Holdings, LLC, and FCA) is the Netherlands.

22. FCA is not a citizen of Wyoming.

23. FCA's registered agent on file with the Wyoming Secretary of State is CT Corporation System, 1908 Thomes Ave., Cheyenne, Wyoming, 82001.

24. FCA is a company, and as such can only act through its agents, servants, and/or employees and it is liable for the acts and omissions of its agents, servants, and/or employees.

25. Because FCA assumed liability for the acts and omissions of Old Chrysler, as alleged herein, FCA is liable for the acts and omissions of the agents, servants, and/or employees of Old Chrysler.

## JURISDICTION AND VENUE

26. Plaintiffs incorporate by reference all allegations in this Complaint.

27. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the suit is between citizens of a State and a citizen of a foreign state, and the amount in controversy exceeds seventy-five thousand dollars ($75,000) exclusive of interest and costs.

28. Pursuant to 28 U.S.C. §1391, proper venue for this action is the United States District Court for the District of Wyoming because a substantial part of the events giving rise to the claim occurred within the District of Wyoming.

29. This Court has general personal jurisdiction over FCA because FCA conducts continuous and systematic business in Wyoming.

30. This Court has specific personal jurisdiction over FCA because FCA purposefully availed itself of the privilege of conducting activities in Wyoming, and Plaintiffs' damages arise out of or relate to those activities. FCA purposefully placed its vehicles into the stream of commerce within Wyoming and throughout the United States, and placed its vehicles into the stream of commerce with awareness that the product was being marketed in Wyoming.

Case 0:21-cv-00156-ABJ   Document 1   Filed 08/17/21   Page 6 of 19

31. Dealerships that sell and service FCA's products, including vehicles sold under the brand names Jeep, Chrysler, and Dodge, operate throughout Wyoming.

32. The owner of the Caravan at the time of the crash purchased the Caravan in Wyoming.

33. The crash and resulting injuries and damages occurred in Wyoming.

34. On information and belief, FCA derived significant revenue from the sale of vehicles in Wyoming.

35. On information and belief, FCA expected and/or reasonably should have expected the sale of its vehicles to have consequences in Wyoming.

36. FCA is registered with the Wyoming Secretary of State to do business in Wyoming.

37. Maintaining jurisdiction over FCA does not work a constitutionally prohibited hardship or a denial of Due Process.

## STATEMENT OF FACTS

38. Plaintiffs incorporate by reference all allegations in this Complaint.

39. In the early morning hours of June 4, 2019, Dain was a passenger in the Caravan, travelling west on Interstate 90 near mile marker 137 in Campbell County, Wyoming.

40. The Caravan was designed, tested, and manufactured by Old Chrysler.

41. On information and belief, the Caravan was not altered or modified from its original design.

42. Dain was wearing his seatbelt in the passenger-side, second row seat of the Caravan.

6

31. Dealerships that sell and service FCA's products, including vehicles sold under the brand names Jeep, Chrysler, and Dodge, operate throughout Wyoming.

32. The owner of the Caravan at the time of the crash purchased the Caravan in Wyoming.

33. The crash and resulting injuries and damages occurred in Wyoming.

34. On information and belief, FCA derived significant revenue from the sale of vehicles in Wyoming.

35. On information and belief, FCA expected and/or reasonably should have expected the sale of its vehicles to have consequences in Wyoming.

36. FCA is registered with the Wyoming Secretary of State to do business in Wyoming.

37. Maintaining jurisdiction over FCA does not work a constitutionally prohibited hardship or a denial of Due Process.

## STATEMENT OF FACTS

38. Plaintiffs incorporate by reference all allegations in this Complaint.

39. In the early morning hours of June 4, 2019, Dain was a passenger in the Caravan, travelling west on Interstate 90 near mile marker 137 in Campbell County, Wyoming.

40. The Caravan was designed, tested, and manufactured by Old Chrysler.

41. On information and belief, the Caravan was not altered or modified from its original design.

42. Dain was wearing his seatbelt in the passenger-side, second row seat of the Caravan.

43. According to the Wyoming Highway Patrol Investigator's Traffic Crash Report (WHP Report), at about 6:25 a.m., the driver lost control of the Caravan, and it rolled in the grassy median.

44. According to the WHP Report, the driver was traveling at the posted speed limit. He was not distracted, or using a cell phone or other electronic device. He was not cited for driving recklessly or carelessly, exceeding the speed limit, or otherwise driving too fast for conditions.

45. During the rollover, the roof structure, stability system, and/or occupant protection systems failed. The roof collapsed onto Dain, crushing his spinal column.

46. Dain had to be extricated from the vehicle by emergency responders, and then transported by ambulance to the closest facility, Campbell County Memorial Hospital (CCMH).

47. The other passengers in the Caravan walked away with only minor injuries.

48. Upon Dain's arrival at the CCMH emergency room, health care providers quickly realized the severity of his injuries. A CT of Dain's cervical spine revealed unstable fractures at the C6-C7 level and a spinal cord injury.

49. Dain was transported via life flight to the University of Colorado Hospital (UCH) neurosurgery intensive care unit.

50. Radiology tests and examinations confirmed acute fractures and jumped facets of C6 on C7, and complete C6 spinal cord injury. Blood was scattered throughout the spinal cord. The following day, neurosurgeons completed a posterior spinal

fusion from C5 through T2, a C6-C7 laminectomy, a C5 partial laminectomy, and an anterior cervical discectomy and fusion of C6-C7.

51. Dain was discharged to the UCH inpatient rehabilitation program on July 10, where he participated in physical and occupational therapy sessions until he was discharged to Craig Hospital for more intensive treatment and rehabilitation on July 16 – almost six weeks after the crash.

52. Dain spent the next three months receiving care at Craig Hospital until he was finally discharged home to Upton, Wyoming.

53. Within a few months after his discharge from Craig Hospital, in December 2019, Dain developed a pressure ulcer – an unfortunate but all too common occurrence for one confined to a wheelchair.

54. Dain received wound care treatments for many weeks, but his condition began deteriorating in the summer of 2020. The wound was getting deeper, and tunneling down to the bone.

55. A July 2020 MRI revealed a bone infection, and Dain underwent a surgical procedure on August 28, 2020, to address the infection.

56. Dain was discharged home on September 1, 2020, where he continues to try to recover.

57. As a direct and proximate result of the acts and omissions alleged herein, Dain sustained serious bodily and emotional injuries.

58. Dain's physical injuries include, but are not limited to, the following:

   a. Unstable cervical spine fractures at C6-C7;

   b. Acute spinal cord injury as C4 AIS B incomplete tetraplegia;

    c. Right peroneal deep vein thrombosis;

    d. Neurogenic bladder;

    e. Neurogenic bowel;

    f. Neuropathic pain;

    g. Spasticity;

    h. Respiratory failure;

    i. Musculoskeletal pain;

    j. Pressure ulcers; and

    k. Bone infection.

## FIRST CAUSE OF ACTION
## PRODUCT LIABILITY- STRICT LIABILITY IN TORT

59. Plaintiffs incorporate by reference all allegations in this Complaint.

60. In the allegations that follow, the phrase "FCA (through Old Chrysler)" is used to denote FCA's assumption of Old Chrysler's liabilities in the bankruptcy proceedings, as set forth above.

61. At all times relevant to this Complaint, FCA (through Old Chrysler) was in the business of designing, testing, manufacturing, assembling, distributing, labeling, inspecting, monitoring, promoting, marketing, selling and/or placing into the stream of commerce its vehicles, including the Caravan involved in this case.

62. At the time the Caravan left the control of FCA (through Old Chrysler), it was in a defective condition and unreasonably dangerous to a person who might reasonably be expected to use it.

63. The Caravan was defective and unreasonably dangerous when FCA (through Old Chrysler) placed it into the stream of commerce.

64. At the time of the incident giving rise to this action, the driver and Dain were using the Caravan in an intended, reasonable, and foreseeable manner and for its intended and reasonably foreseeable purpose.

65. On information and belief, the Caravan was intended to and did reach the owner and passengers without a substantial change in the condition in which it was sold.

66. FCA (through Old Chrysler) knew or should have known of the defective and/or unreasonably dangerous condition of the Caravan at the time it left FCA's (through Old Chrysler's) control, and of the substantial dangers involved in the reasonably foreseeable use of the Caravan.

67. FCA (through Old Chrysler) knew or should have known that ultimate users, operators, and/or consumers would not properly inspect the Caravan for defects and dangerous conditions, and that detection of such defects would be beyond the capabilities of such persons, including the owner, driver, and Plaintiffs.

68. On information and belief, the Caravan was not materially altered, modified, or damaged by the owner, the driver, or Plaintiffs prior to the subject incident. At the time the Caravan left FCA's (through Old Chrysler's) control and entered the stream of commerce, it was unreasonably dangerous, defective, and unsafe for its intended use.

69. The design and structure of the Caravan include, but are not limited to, the following defects, which individually or in combination, proximately caused Plaintiffs' injuries and damages:

    a. The design and structure was defective and unreasonably dangerous in that the roof or ceiling of the vehicle collapsed, tented, and/or became deformed during

        a foreseeable rollover incident sequence;

    b. The roof structure of the vehicle was defective and unreasonably dangerous in that it provided inadequate roof or ceiling support in the event of a foreseeable rollover incident sequence, and lacked adequate strength of roof material such that during a foreseeable rollover sequence, an occupant would be injured by the roof; and/or

    c. The interior surfaces of the occupant space had inadequate padding.

70. The Caravan was further rendered unreasonably dangerous and defective for the following reasons:

    a. The failure to equip the vehicle with a technologically feasible and available structure which would prevent the roof from collapsing during a foreseeable rollover sequence;

    b. The failure to adequately test the vehicle before and during the design, manufacture, production, and sale of the vehicle to the public, and/or knowingly placing the dangerously designed and/or manufactured vehicle into the stream of commerce;

    c. The failure to make the vehicle reasonably crashworthy;

    d. The failure to provide an adequate warning of the dangers of driving and/or riding in the vehicle with its defective design and/or manufacture as set forth above; and/or

    e. The failure to adequately monitor the performance of the vehicle and of prior model vehicles in the field to ensure that the vehicle and its components were

safely designed and provided adequate protection in foreseeable rollover incident sequences.

71. FCA (through Old Chrysler) knew or should have known that safer alternative designs were available which would have prevented Plaintiffs' injuries and damages had they been utilized.

72. The Caravan caused physical harm to Dain in that it failed to protect him from the impacts of the rollover. As a direct and proximate result of the Caravan's defective condition, Dain was seriously injured, and Tessa and O.R.P. suffered a loss of consortium.

73. For these reasons, FCA (through Old Chrysler) is strictly liable in tort for the injuries suffered by Plaintiffs, and for the damages more specifically detailed in the "Damages" section of this Complaint.

## SECOND CAUSE OF ACTION
## PRODUCT LIABILITY- NEGLIGENCE

74. Plaintiffs incorporate by reference all allegations in this Complaint.

75. At the time and place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Plaintiffs to avoid causing them injury.

76. FCA (through Old Chrysler) was negligent in designing, manufacturing, assembling, inspecting, testing, labeling, marketing, distributing, monitoring, promoting, and/or selling the Caravan.

77. FCA (through Old Chrysler) breached its duty to Plaintiffs by placing the Caravan in the stream of commerce in an unreasonably dangerous, defective, and unsafe condition for its intended use, as explained above.

78. At the time and place of the Caravan's manufacture and of the events described herein, FCA (through Old Chrysler) breached the duty of care through, among other things, the following acts and omissions:

   a. Failing to equip the vehicle with a technologically feasible and available structure which would prevent the roof from collapsing during a foreseeable rollover sequence;

   b. Failing to adequately test the vehicle before and during the design, manufacture, production, and sale of the vehicle to the public, and/or knowingly placing the dangerously designed and/or manufactured vehicle into the stream of commerce;

   c. Failing to make the vehicle reasonably crashworthy;

   d. Failing to provide an adequate warning of the dangers of driving and/or riding in the vehicle with its defective design and/or manufacture as set forth above;

   e. Failing to adequately monitor the performance of the vehicle and of prior model vehicles in the field to ensure that the vehicle and its components were safely designed and provided adequate protection in foreseeable rollover incident sequences;

   f. Failing to properly design, test and manufacture the Caravan and its component parts in a manner sufficient to protect the safety of vehicle occupants in the event of a crash; and

   g. Failing to exercise reasonable care under the circumstances.

79. FCA's (through Old Chrysler's) negligent acts and omissions breached its duty to Plaintiffs, and directly and proximately caused their injuries, and the damages more specifically detailed in the "Damages" section of this Complaint.

## THIRD CAUSE OF ACTION
## LOSS OF SPOUSAL CONSORTIUM

80. Plaintiffs incorporate by reference all allegations in this Complaint.

81. At the time and place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Tessa to avoid causing her injury.

82. Tessa and Dain are, and have been at all times relevant to the facts alleged in this Complaint, married.

83. The acts and omissions of FCA (through Old Chrysler) breached the duty of care it owed Tessa.

84. Prior to the injuries sustained by Dain, he was able to perform his duties as a husband by providing emotional support, physical intimacy, and guidance to his wife, Tessa, and by providing care, maintenance, and management of their family home.

85. As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), Dain is no longer able to perform his duties as a husband by providing emotional support, physical intimacy, and guidance to his wife, Tessa, and he is no longer able to provide the care, maintenance, and management of their family home that he previously provided.

86. The nature and character of the relationship between Dain and Tessa changed as a direct and proximate result of the injuries Dain sustained in the crash. As a direct and proximate result thereof, Tessa has been deprived of the care, comfort,

society, companionship, physical intimacy, physical assistance, and consortium of Dain.

87. As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), Tessa suffered the damages set forth above and in the "Damages" section of this Complaint.

**FOURTH CAUSE OF ACTION**
**LOSS OF PARENTAL CONSORTIUM**

88. Plaintiffs incorporate by reference all allegations in this Complaint.

89. At the time and place of the events described herein, FCA (through Old Chrysler) owed a duty of care to Dain and his minor child, O.R.P., to avoid causing them injury.

90. The acts and omissions of FCA (through Old Chrysler) breached the duty of care it owed O.R.P.

91. Prior to the injuries sustained by Dain, he was able to perform his duties as a father to his minor child, O.R.P., including but not limited to parental care, training, companionship, nurturing, guidance, supervision, socialization, and other care, comfort, and society.

92. As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), Dain is unable to perform the work and services he customarily performed prior to his injuries as a parent in the care, comfort, and society of his minor child, O.R.P.  As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), O.R.P. has been and will continue to be deprived of his father's care, comfort and society.

93. As a direct and proximate result of the acts and omissions of FCA (through Old Chrysler), O.R.P. suffered the damages set forth above and in the "Damages" section of this Complaint.

## DAMAGES

94. Plaintiffs incorporate by reference all allegations in this Complaint.

95. As a direct result of the acts and omissions of FCA (through Old Chrysler), as set forth in this Complaint, Dain is entitled to be compensated and to recover the following damages:

   a. Past and future physical pain and suffering in an amount to be proven at trial;

   b. Past and future emotional pain and suffering in an amount to be proven at trial;

   c. Past and future loss of enjoyment of life in an amount to be proven at trial:

   d. Past and future loss of wages, income, and earning capacity in an amount to be proven at trial;

   e. Other past and future pecuniary loss in an amount to be proven at trial;

   f. Past and future medical and related expenses in an amount to be proven at trial; and

   g. Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

96. As a direct result of the acts and omissions of FCA (through Old Chrysler), as set forth in this Complaint, Tessa is entitled to be compensated and to recover the following damages:

   a. Loss of consortium of her husband, Dain, in an amount to be proven at trial; and

      b.   Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

97.   As a direct result of the acts and omissions of FCA (through Old Chrysler), as set forth in this Complaint, O.R.P. is entitled to be compensated and to recover the following damages:

      a.   Loss of consortium of his father, Dain, in an amount to be proven at trial; and

      b.   Costs of this action, and any other further relief allowed by law as this Court deems just and proper.

WHEREFORE, Plaintiffs request that this Court enter judgment against FCA in an amount supported by the allegations of this Complaint, as follows:

1. Judgment against FCA for general damages in an amount consistent with the allegations contained herein and to be proved at trial;

2. Judgment against FCA for special damages in an amount consistent with the allegations contained herein and to be proved at trial; and

3. Judgment for costs, interest and such other and further relief as the Court deems just and equitable.

DATED this 17th day of August 2021.

          /s/ Robert A. Krause
          J. Douglas McCalla
          Robert A. Krause
          Elizabeth A. Richards
          THE SPENCE LAW FIRM, LLC
          15 South Jackson Street
          P.O. Box 548
          Jackson, Wyoming 83001
          307.733.7290

                                        Larissa A. McCalla
                                        MCCALLA LEGAL GROUP
                                        540 Ulm Road
                                        Wyarno, Wyoming 82845
                                        307.699.0366

                                        Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs, by and through counsel and pursuant to Federal Rule of Civil Procedure 38, hereby request that this matter be tried to a jury of six and submit the requisite fee herewith.

DATED this 17th day of August 2021.

/s/ Robert A. Krause
Robert A. Krause